```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

JANINE RICHARDSON,

                Plaintiff,          1:16-CV-00658-MAT
     -v-                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____
```

## INTRODUCTION

Janine Richardson ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On March 1, 2013, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of August 8, 2009, due to back and neck problems, sciatica, and herniated disks. Administrative Transcript ("T.") 86, 162-69. The claims were initially denied on May 17, 2013. T. 102-07. At Plaintiff's

request, a hearing was conducted on December 11, 2014, in Buffalo, New York by administrative law judge ("ALJ") Stephen Cordovani, with Plaintiff appearing with her attorney. A vocational expert ("VE") also testified. T. 34-85. The ALJ issued an unfavorable decision on April 6, 2015. T. 14-33. Plaintiff appealed the decision to the Appeals Council ("AC"), which denied Plaintiff's request for review on June 16, 2016, making the ALJ's decision the final decision of the Commissioner. T. 8-10. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 8, 2009, the alleged onset date. T. 19. Although Plaintiff had worked as a babysitter since the onset date, the ALJ found this work activity did not rise to the level of substantial gainful activity. *Id*.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: a lumbar disc bulge and superimposed left foraminal protrusion at L4-5, with the bulging disc having a subtle effect of the normal caliber thecal sac and a mild/moderate degree of left foraminal narrowing. T. 20. The ALJ also noted that Plaintiff alleged she had a neck impairment, which

2

was evident on a 2007 MRI examination. However, the ALJ found Plaintiff had not sought treatment for her neck pain or cervical spine problems, nor had she mentioned any such issues to her medical providers from the time she began seeking medical treatment for her other impairments in 2013 through the date of her hearing. He further found these impairments had no significant impact on Plaintiff's work-related functional abilities. Accordingly, the ALJ found these additional impairments to be non-severe. *Id.*

In addition to Plaintiff's medically determinable physical impairments, the ALJ noted Plaintiff's attorney also alleged "a potentially severe psychological impairment" in his pre-hearing memorandum, based presumably on Plaintiff's visit to the emergency department with complaints of depression and back pain in May 2014, followed the next day by a psychiatric evaluation. *Id.* (referring to T. 237-38 and T. 263-320). Based on the record and Plaintiff's testimony, the ALJ found Plaintiff made minimal efforts to obtain follow-up care for depression and failed to mention any mental health issues to her primary care providers. He further found Plaintiff's medically determinable mental impairment of depressive disorder did not cause more than a minimal limitation in her ability to perform basic mental work activities. Accordingly, the ALJ found Plaintiff's depressive disorder to be non-severe. T. 21-22.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 23.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following additional limitations: can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and can never climb ladders, ropes or scaffolds. *Id.*

At step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as an assembler, production. T. 27. In the alternative, at step five, the ALJ relied on the VE's testimony to find that there are other jobs existing in the national economy Plaintiff is also able to perform, including the representative occupations of marker, office helper, and cashier. T. 28. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 29.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The

district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand of this matter is warranted for the following reasons: (1) the ALJ's RFC finding is unsupported by substantial evidence and is inconsistent with the applicable legal standards; and (2) the ALJ failed to follow the appropriate legal standard when finding Plaintiff not fully credible. For the reasons discussed below, the Court finds Plaintiff's arguments without merit and affirms the Commissioner's final determination.

**I.    Substantial Evidence Supports the ALJ's RFC Finding**

Plaintiff argues the ALJ erred in assessing Plaintiff's RFC by relying on an ambiguous and vaguely worded medical opinion, and by failing to recontact the consultative examiner or obtain a clarifying medical opinion. She further argues the ALJ failed to properly cite any evidence supporting the RFC findings. The Court disagrees, for the reasons set forth below.

**A. The RFC Finding is Supported by the Opinion of Consultative Examiner Dr. Donna Miller**

Plaintiff was examined by consultative internist Dr. Donna Miller on May 8, 2013. T. 253-56. Dr. Miller noted that upon examination, Plaintiff appeared to be in no acute distress. She exhibited a normal gait, was able to walk on her heels and toes without difficulty, and was able to perform a full squat. Plaintiff used no assistive devices and needed no assistance changing for the exam or getting on and off the exam table. T. 254. An exam of her neck showed no masses, no JVD, and no thyromegaly or bruits. The musculoskeletal exam revealed lumbar spine flexion of 60 degrees, extension of 5 degrees, lateral flexion of 25 degrees bilaterally, and rotation of 25 degrees bilaterally. Plaintiff's straight leg raise test was negative bilaterally. She exhibited a full range of motion of her shoulders, elbows, forearms, and wrists bilaterally, as well as a full range of motion of her hips, knees, and ankles bilaterally. Plaintiff had no evident subluxations, contractures, ankylosis, or thickening. Her joints were stable and nontender.

T. 255. An x-ray revealed straightening of the cervical and lumbosacral spine. *Id*. Dr. Miller diagnosed Plaintiff with chronic neck pain and chronic low back pain/sciatica. *Id*. Based on her examination, Dr. Miller opined Plaintiff had mild to moderate limitations with repetitive heavy lifting, pushing, pulling and carrying. *Id*.

Plaintiff contends that Dr. Miller's opinion was vague and did not constitute substantial evidence for the ALJ's RFC finding. This argument lacks merit. While Dr. Miller's source statement itself is relatively brief, she performed a thorough and complete examination of Plaintiff, and her opinion was not impermissibly vague. "[T]he mere use of phrases such as 'moderate' or 'mild' does not render a doctor's opinion vague or non-substantial for purposes of an ALJ's RFC determination." *Dutcher v. Colvin*, No. 1:12-CV-1662 GLS, 2014 WL 295776, at *5 (N.D.N.Y. Jan. 27, 2014). Instead, the determinative question is whether the conclusions were supported by examination results and the record as a whole. *Id.*; *see also O'Bara v. Colvin*, No. 1:14-CV-00775 (MAT), 2017 WL 2618096, at *2 (W.D.N.Y. June 16, 2017) (the use of terms like "mild" and "moderate" does not render a consultative examiner's opinion impermissibly vague, where she "conduct[ed] a thorough examination and explain[ed] the basis for the opinion")(internal quotation omitted). Here, Dr. Miller's thorough examination of Plaintiff revealed relatively normal findings, including: a full range of

7

motion of her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally; nontender and stable joints; and full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally of Plaintiff's cervical spine. T. 255. Dr. Miller's notes indicate Plaintiff gave her a full history of Plaintiff's neck and back pain, including the 2007 MRI that showed three abnormal discs in Plaintiff's neck. T. 253. Dr. Miller's thorough examination of the Plaintiff, along with her detailed notes and findings, provided a sufficient basis for her opinion. Accordingly, Dr. Miller's opinion provided substantial evidence for the ALJ's conclusions.

Plaintiff's argument that the ALJ was required to recontact Dr. Miller also lacks merit. In order for an ALJ to be required to recontact a medical source, that medical source's report must present some inconsistency, lack of information, or fail to appear to be based on medically acceptable techniques. *See Hall v. Astrue*, 677 F.Supp.2d 617, 627 (W.D.N.Y. 2009). Dr. Miller's report contained no such inconsistencies or lack of information, and was based on Dr. Miller's own examination of Plaintiff. Additionally, the Court notes that Plaintiff's treating physician declined to provide a statement regarding her limitations. *See* T. 39. As such, to the extent Plaintiff's brief can be read as suggesting the ALJ should have sought an opinion from her treating physician, that

8

argument lacks merit, inasmuch as her treating physician had already affirmatively stated that she would not provide one.

Plaintiff also contends that the ALJ should have ordered additional consultative examinations. Again, this argument lacks merit, because Dr. Miller's opinion was supported by her examination and not impermissibly vague. Moreover, Dr. Miller's opinion was not stale, as there is no indication that Plaintiff's condition had significantly worsened after Dr. Miller issued her opinion. *See Jones v. Colvin*, No. 13-CV-06443 MAT, 2014 WL 2560593, at *7 (W.D.N.Y. June 6, 2014) (consultative examiner's opinion was not stale where Plaintiff failed to show that her condition had deteriorated after the report). Accordingly, Dr. Miller's report provided the ALJ with the information necessary to make a substantially supported RFC finding that Plaintiff could perform light work, which incorporates the limitations included in Dr. Miller's opinion.

**B. The RFC Finding is Supported by Objective Medical Evidence of Record**

Plaintiff also argues that the ALJ's RFC determination was not supported by substantial evidence because he did not properly cite any evidence supporting the RFC findings. This argument is without merit. The ALJ's RFC findings were consistent with the objective medical evidence of record, which was discussed at length in his decision. Specifically, the ALJ noted the findings of Plaintiff's 2007 MRI, Plaintiff's 2013 examination at Buffalo General Hospital,

9

Plaintiff's 2013 lumbar x-ray ordered by Dr. Miller, and Plaintiff's 2014 lumbar MRI and the accompanying review. *See* T. 20, 25. As the ALJ noted, Plaintiff's 2007 MRI revealed only mild annular disk bulges at C6-C7, and C7-T1, without evidence of focal disk herniation, and a moderate central disk herniation at C5-C6. There was no evidence of spinal stenosis or intradural or extradural neoplasm. The cervical spine cord appeared intrinsically normal, without evidence of myelopathy. T. 20, (referring to T. 406-07).

In January 2013, Plaintiff was examined at Buffalo General Hospital, where she exhibited a normal range of motion, normal alignment, a negative straight leg raising test, and was able to change position and ambulate without difficulty. T. 247.

As previously noted, Dr. Miller, ordered a lumbar X-ray for Plaintiff's consultative examination in 2013, which revealed straightening of the cervical and lumbosacral spine. Neurological findings were benign. T. 25 (referring to T. 255).

Plaintiff's 2014 lumbar spine MRI revealed a disc bulge and superimposed left foraminal protrusion at L4-5, having a subtle effect on the ventral margin of the normal caliber thecal sac and moderate left foraminal compromise from encroachment by a disc protrusion. T. 25 (referring to T. 365). On September 26, 2014, Plaintiff had an appointment with Dr. Pamela Reed to review the MRI results. Dr. Reed noted that on examination, Plaintiff's

lumbosacral spine was normal. T. 25 (referring to T. 375). These mild findings are fully consistent with ALJ's RFC assessment, and the Court finds no merit in Plaintiff's contention that the ALJ failed to properly consider the objective medical evidence.

**II. The ALJ's Credibility Finding was Proper**

Plaintiff's second and final argument is that the ALJ erred in his evaluation of Plaintiff's subjective complaints. Specifically, Plaintiff contends the ALJ: (1) played the role of doctor to diminish Plaintiff's credibility; (2) improperly used the lack of medical treatment to diminish credibility; and (3) improperly relied upon Plaintiff's activities of daily living to diminish her credibility. For the reasons set forth below, the Court finds no error in the ALJ's evaluation of Plaintiff's subjective complaints.

As an initial point, the Court notes that an ALJ's credibility assessment is entitled to deference. "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 12-CV-6308 (MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). While the Commissioner's regulations set forth seven factors the ALJ is to consider in assessing credibility, the ALJ is not required to explicitly discuss each of the factors, so long as

he sets forth the reasoning for his credibility determination and that determination is adequately supported by the evidence. "[T]he predominant focus of a credibility analysis must be the entire case record as a whole, and ... the adjudicator [need only] show specific cause, grounded in evidence, for his or her conclusion." *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 547 (S.D.N.Y. 2004). In this case, for the reasons set forth below, the Court finds that the ALJ's credibility assessment was reasonable and consistent with the record.

### A. The ALJ Properly Developed the Record Pertaining to Plaintiff's Subjective Complaints and Reported Functional Limitations

Plaintiff contends the ALJ should have obtained a medical expert's testimony or additional medical evidence to determine if Plaintiff's allegations were out of proportion with clinical findings. This argument lacks merit. It is well-established that while "an ALJ has an affirmative duty to develop the administrative record even when a claimant is represented by counsel, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (quotations and citations omitted). The question is whether the administrative record is "robust enough to enable a meaningful assessment of the particular conditions on which the petitioner

claims disability." *Sanchez v. Colvin*, No. 13 Civ. 6303(PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015).

At the hearing in this case, Plaintiff's existing medical record was complete, other than the 2007 MRI, which counsel requested and later submitted into evidence. Plaintiff's counsel also requested a repeat consultative examination or additional medical opinion evidence, which request the ALJ took into consideration. T. 38-39. After taking Plaintiff's testimony and reviewing the completed record, the ALJ determined that the validity of Dr. Miller's consultative opinion was not undercut or impaired by Plaintiff's treatment records following her consultative examination, her complaints and actual activities, or the noted findings on a September 2014 lumbar MRI examination. Furthermore, the ALJ found followup treatment since Plaintiff's original consultative examination provided ample opportunity for comments on Plaintiff's back complaints. T. 27. The Court finds no error in this conclusion, which was well-supported by the record.

**B. Plaintiff's Lack of Medical Treatment**

The ALJ's conclusion that Plaintiff's subjective complaints were inconsistent with the medical evidence of record, including her limited medical treatment, is also well-supported. Since her involvement in a motor vehicle accident in 2006, Plaintiff has sought limited medical treatment. Following the accident, Plaintiff received limited chiropractic treatment and physical therapy

covered by no-fault insurance in 2007. T. 61, 391, 395. In March 2007, Plaintiff underwent a cervical MRI examination, which revealed a moderate central disk herniation at C5-C6. The imaging also revealed mild annular disk bulges at C6-C7, and C7-T1, without evidence of focal disk herniation. T. 406-07.

Plaintiff testified she received no further medical care until 2013, when she presented at the emergency department at Buffalo General Hospital for back pain. T. 62. At the hospital, Plaintiff reported she had suffered from right lower back pain since April 2012, but it had recently worsened. Plaintiff reported she had not mentioned the pain to her primary care doctor. T. 246. Upon examination, she exhibited a normal range of motion, normal alignment, a negative straight leg raising test, and was able to change position and ambulate without difficulty. T. 247. At the hearing, Plaintiff testified she was told at the hospital to make an appointment with her primary care doctor to have diagnostic testing performed. This subsequent testing revealed bulging disks. Plaintiff received some physical therapy, but stopped going because she felt it was worsening her pain. T. 63. Plaintiff also testified she had gone to Buffalo General Hospital with complaints of back pain prior to 2013, although there are no records of these visits. *Id.*

In May 2014, Plaintiff returned to Buffalo General Hospital's emergency department with complaints of progressing chronic low

back pain and depression. T. 280. Upon examination, Plaintiff's had some mild diffuse tenderness in her back with normal alignment and negative straight leg raising tests. She was cooperative, though depressed, tearful, and avoiding eye contact with the examiner. T. 281. Plaintiff was transferred to Erie County Medical Center for a psychiatric evaluation after expressing suicidal thoughts. *Id.*

Plaintiff received a mental health assessment at Erie County Medical Center on May 14, 2014. She reported that she would never end her own life and that she had no suicidal or homicidal ideation, intent or plan. *Id*. The examining psychiatrist determined Plaintiff was no longer suicidal and could be discharged with linkage to out-patient mental health services as soon as possible. T. 384. However, it does not appear Plaintiff ever received additional mental health treatment, though she testified at the hearing that she had been trying to schedule an appointment for counseling. T. 58-59. She further testified that she had not discussed with her primary care doctor concerning a mental health referral, but she intended to. T. 59-60.

In June 2014, Plaintiff sought new primary care treatment with Community Health Center of Buffalo and a referral for physical therapy. T. 367. At her initial physical therapy evaluation, Plaintiff reported her pain level was a ten. She reported her pain increases with sitting, rising, walking for more than thirty minutes, bending, and lifting. T. 370. Records indicate Plaintiff

15

attended three physical therapy sessions between June and July, 2014, but was discharged due to her lack of compliance with attendance policies, after missing two appointments. T. 385.

In his decision, the ALJ noted Plaintiff has required and sought only limited evaluation and treatment for her lumbar spine impairment. T. 26. The ALJ considered Plaintiff's explanation of financial constraints for this limited treatment, but found it was inconsistent with the extreme level of pain and functional limitation Plaintiff was alleging. *Id*. The ALJ also noted that the medical record contains no evidence Plaintiff was in need of a surgical evaluation or referral to pain management, and in fact had no treating relationship with a primary care provider for over a year, prior to her May 2014 emergency department visit. Furthermore, the ALJ noted that the treatment notes from Plaintiff's most recent appointment with her primary care physician, Dr. Reed, reported that upon examination, "lumbosacral spine normal" was the only musculoskeletal finding. *Id*. referring to T. 375.

An ALJ is permitted to take a claimant's failure to pursue treatment into account in assessing credibility, so long as he also "consider[s] any explanations that the individual may have provided . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Meadors v. Colvin*, No. 5:13-CV-0160 LEK, 2015 WL 224759, at *11 (N.D.N.Y. Jan. 15,

16

2015). Here, Plaintiff explained that she had sought limited treatment due to financial constraints. The ALJ took this explanation into account, but explained that it was "at odds with the extreme level of pain and functional limitation she alleges . . ., which it is reasonable to assume one would seek to alleviate even in the face of limited finances." T. 26. The ALJ further noted that Plaintiff's financial difficulties did not explain the fact that she had never been deemed in need of a surgical evaluation or a referral to pain management. *Id*. Accordingly, the ALJ complied with the requirement that he consider Plaintiff's explanation for her limited treatment, and gave adequate reasons for his rejection of that explanation. As such, the ALJ properly took Plaintiff's limited treatment into account in finding Plaintiff's allegations of pain and functional limitations were generally not credible.

**C. Plaintiff's Activities of Daily Living**

The ALJ also found that Plaintiff's allegations of the nature and severity of her pain were inconsistent with her continued childcare activities, including Plaintiff's self-employment as a daycare provider in 2013 and her ongoing babysitting of two of her grandchildren. T. 26. "An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination." *Pennock v. Comm'r of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22,

17

2016). "The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted [Plaintiff's] testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.*, 5:12-cv-1795 (MAD/CFH), 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014).

Plaintiff testified she has had pain in her back and neck since she was involved in a 2006 motor vehicle accident. She described her pain as fluctuating, with good days and bad days, but with a typical level of eight on a scale up to ten. T. 44. At the hearing, Plaintiff estimated she could stand for ten to fifteen minutes at a time and then would need to sit for twenty minutes. T. 45-46. She also testified that in a working situation, she would be unable to sit for five minutes. T. 47. Plaintiff testified lifting a gallon of milk would be painful for her and that she would be unable to repetitively lift that weight during a work day. *Id*. However, Plaintiff also testified that she provides weekly care for two of her young grandchildren, for up to sixteen hours at a time. T. 51-55.

In his decision, the ALJ found Plaintiff's testimony to be internally inconsistent. This inconsistency, he noted, was suggestive of testimony intended to create an impression of a severe limitation, rather than testimony offered as a candid

18

description of one's actual functional limitations and daily activities. T. 27. This assessment was within the ALJ's discretion and supported by substantial evidence. While an ALJ "is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. § 416.929, [he is] not require[d] to accept the claimant's subjective complaints without question," *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012), quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence of the record." *Id.* Plaintiff's testimony that she is able to care for her grandchildren for extended periods of time is inconsistent with the otherwise severe limitations she claims. The ALJ was permitted to take this inconsistency into account in finding Plaintiff less than fully credible.

For reasons set forth above, the Court finds no error in the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. The Court accordingly finds that remand is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 14) is granted.

19

Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   July 30, 2018
         Rochester, New York